# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| DAVID DEVINE | : | NO. 11-001 |
| Defendant. | | |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                                            SEPTEMBER 30, 2011

## INTRODUCTION

Mr. Devine is facing four felony counts: two counts of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). That these are serious charges that engender the heights of professional and public passions and carry serious and significant potential punishment - - all prompting good faith debate and dispute, including about lengthy mandatory minimum punishment upon conviction - - is at the root of the motions that are resolved in this Memorandum and the accompanying Order.

For immediate purposes, the operative details and legal principles that govern the outcome of the pending motions do not so much concern what Mr. Devine has allegedly done to draw these charges as what has occurred, or not occurred, and what has been discussed, or not discussed, about lie detector tests (polygraphs) since he became involved in the criminal justice system. Specifically, Mr. Devine has presented a Motion to Enforce Plea Agreement and a Motion to Dismiss Counts I through III of Superceding Indictment. Both motions are opposed

by the Government; both motions were the subject of an evidentiary hearing and oral argument; both motions have been fully briefed.

At the outset, the Court sees merit in outlining what is not at issue in this Memorandum. It does not determine whether the Defendant did or did not distribute or possess child pornography or even admitted any such conduct. It does not resolve whether he did or did not ever have sexual contact with any child or even if any child ever claimed as much. The Memorandum is not dependent upon whether the Defendant failed or passed any polygraph. The Memorandum is certainly not about whether polygraphs are good, useful, benign, beneficial, a boon or boondoggle, or the gold standard in any kind of case. The issue at hand is much more basic, even though its importance to the parties is undeniable.

For the reasons outlined below, and after careful review of the materials submitted, the testimonial and documentary evidence placed into the record and the appropriate statutory and case law, both motions are denied.

**FACTUAL BACKGROUND**[1]

Delaware County law enforcement personnel, acting upon information emanating from an internet site and then processed through the National Center for Missing and Exploited Children, applied for and obtained a search warrant for David Devine's residence. They executed the warrant on August 4, 2010. As of that date, Mr. Devine's employment history included his work as a first grade teacher in a West Chester, Pennsylvania public elementary school, his work as a substitute school teacher in a number of school districts, his management of a summer day camp for young children at his home, his coaching gymnastics for young children

---

[1] The material facts are not in dispute. Their import is.

and, finally, his offering massage therapy for special needs children. At the time of the search warrant, Mr. Devine lived with a woman and her two young sons.

As a result of the search, on August 4, 2010, Mr. Devine was arrested by state authorities. A Pennsylvania state police forensic examiner examined Mr. Devine's computer and from it recovered many child exploitation images. In September 2010 the Delaware County District Attorney charged Mr. Devine with a number of offenses relating to possession of images and videos of children engaged in sexually explicit conduct. Soon after being arrested Mr. Devine took, but failed, a polygraph examination administered by the local law enforcement officials. During the early August to early December 2010 time period, counsel for Mr. Devine engaged in various discussions and potential plea negotiations with the Delaware County prosecutors.

By December 6, 2010 Mr. Devine and his counsel learned that federal law enforcement authorities were seriously considering taking over the prosecution. Accordingly, the County prosecutors declined to proceed further with plea negotiations. Defense counsel, himself a former federal prosecutor, immediately turned his attention to the effort of trying to dissuade the federal authorities from adopting the case. To that end, defense counsel met on December 7, 2010 with the assigned prosecutor, her immediate supervisor and the head of their division. The focus of this first meeting was defense counsel's effort to share background information about Mr. Devine in an effort to avoid the adoption of the prosecution by the federal authorities. During that meeting there was no discussion about a polygraph test.

Slightly more than a week later, on December 16, 2010, another meeting convened among the assigned assistant United States attorney, her supervisor, defense counsel and a consulting forensic psychologist, Dr. Elliot Atkins. Defense counsel had enlisted Dr. Atkins as

part of the effort to explain portions of Mr. Devine's personal history and, in turn, in the hope of still being able to convince the federal authorities to return the case to the state prosecutors. Dr. Atkins testified at the hearing on the defense motions. He described the December 16 meeting as one in which he explained his work and progress with Mr. Devine and in which defense counsel demonstrated concerns about Mr. Devine's initial failure of the polygraph test administered right after having been arrested. Dr. Atkins testified that he gathered from the meeting that the Government lawyers (most particularly the supervising lawyer) harbored many concerns about Mr. Devine and were likely to be very reluctant to omit the possibility of the statutory mandatory minimum jail sentence. In the final analysis, Dr. Atkins admitted under oath that at the December 16 meeting he heard no offer by the Government as to terms under which the Government would drop the more serious charges against the settlement; nor did he hear or see any manifestation of an agreement about a polygraph or even the seeds of such an agreement. As described by defense counsel, during the meeting defense counsel asked the senior Government lawyer present to return the case to Delaware County. Defense counsel also knew from the meeting that the senior prosecutor was very concerned to know more about Mr. Devine's "career choices" and activities. Specifically, the federal prosecutors expressed their concerns about Mr. Devine's documented career choices, the proximity that his employment placed him vis a vis young children, and the possibility that Mr. Devine had engaged in sexual activities directly with other children. During the December 16 meeting, the senior Government lawyer present explained that in order to consider limiting the charges to exclude charges carrying a mandatory minimum sentence the Government would require Mr. Devine to undergo a polygraph examination as one way to address those kinds of concerns..

All witnesses acknowledged that defense counsel and the supervising prosecutor know and respect each other and had even worked together in the same U.S. Attorney's office a number of years ago, as had defense counsel and the assistant United States attorney in the county district attorney's office.

Following the December 16 meeting, the discussions and negotiations continued. Approximately a week after the meeting the supervising prosecutor informed the defense counsel that the federal Government had determined to keep the Devine prosecution. Further, defense counsel was told that in order for the prosecutors to consider forgoing charging a count or counts carrying a mandatory minimum sentence, Mr. Devine would have to pass a polygraph that addressed the Government's concerns about Mr. Devine's career choices. In response, defense counsel said that he would think about it and get back to the prosecutors.

The Government filed an Information charging Mr. Devine with distribution of child pornography. The prosecutors had then believed that Mr. Devine would be entering a prompt guilty plea. Therefore, there was neither an arrest nor other processing of Mr. Devine at that time. The assistant prosecutor and defense counsel had a phone call conversation on January 4 about filing of the Information. Then, by letter dated January 6, 2011, defense counsel informed the assigned assistant U.S. Attorney that the defense would not be subjecting Mr. Devine to a polygraph examination. On January 13, 2011 Mr. Devine was arraigned pursuant to the Information.

Negotiations continued, primarily over the defense effort to wrestle the prosecutors into a position of accepting a guilty plea to charges that did not include the statutory 5-year mandatory minimum, i.e., charges of possession of child pornography (no mandatory minimum) rather than

5

the more serious distribution charges. On March 24, 2011, when the Information was extant, the defense requested, and received, a continuance of the various deadlines to permit a forensic examination of Mr. Devine's computer. Counsel continued to communicate with each other by phone, by letter and by email. Throughout these communications, the Government persisted in stating that consideration to charging the lesser charges would be given only if Mr. Devine was subjected to a polygraph examination given the Government's persistent concerns about Mr. Devine's background of so many child-focused endeavors. Defense counsel consistently expressed that Mr. Devine would not take a lie detector test. Representative of the defense position was counsel's April 12, 2011 letter to the federal prosecutor:

> ". . . you asked me if Mr. Devine would consent to take a polygraph, which if passed would cause the government to withdraw its mandatory minimum count from the currently pending two-count Information. David Devine is in therapy. His therapist [reports that Mr. Devine suffers from post traumatic stress of a variety making Mr. Devine] not someone who can successfully take a polygraph examination and pass it. Perhaps that is why David failed the polygraph examination . . . on the night of his arrest . . . ***In any event, he will not take a polygraph examination, on the advice of his treating therapist***.
> (emphasis supplied)

In response, the supervising prosecutor, on April 15, 2011 wrote to defense counsel:

> In [your April 12 letter] you declined to have Mr. Devine submit to a polygraph examination on the advice of his treating therapist.
>
> . . . , I believe that we could come to an agreement on the legal consequences. I think that we could negotiate an appropriate agreement for immunity regarding any disclosures Mr. Devine might make . . our interest would be limited to contact with pre-adolescents.
>
> Without some way of assuring the government that Mr. Devine has not engaged in inappropriate conduct with pre-adolescent children however, there is no way that we can agree to a plea to anything less than a crime with a mandatory minimum

> [We] would be happy to have further discussions with you on this question.

Defense counsel's response was prompt. By letter dated April 19, counsel stated:

> . . . I have a natural reluctance to subject any of my clients to polygraph examinations. I don't believe in them. I think there is good reason why they are not accepted as "evidence," and for these reasons I am loath to allow polygraph to be the linchpin of any disposition of a case . . .
>
> Under all of the circumstances, I ask that you, in this one instance, back away from your demand that he be polygraphed . . .

And, again, by email dated April 25, defense counsel said to the prosecutors:

> . . . I am convinced that [Mr. Devine] will fail the polygraph for reasons which do not relate to the underlying purpose of the test. In that way, he will have gained nothing and your office will continue to believe that he has done something which he has never done.
>
> Under the circumstances, we will proceed to trial on Count I and plead guilty to Count II.

After this exchange, and unbeknownst ahead of time by the prosecutors, defense counsel did actually contact a polygrapher and made private arrangements for Mr. Devine to take a lie detector test. The test was administered in late May by an investigator often used in county investigations. Neither the fact of the test, the identity of the test administrator, nor the text of the questions to be asked was discussed or even disclosed to the federal prosecutors until after the fact when defense counsel sent the results to the assistant U.S. attorney. She responded by a June 1 email that the F.B.I. wanted to administer its own polygraph, to which defense counsel responded that if the test was to be conducted by the F.B.I. the test questions would have to be limited to the "single issue" of whether Mr. Devine had had sexual interaction with children in his charge. The prosecutor rejected that ground rule and stated that her office's interest

7

continued to be broader, namely whether Mr. Devine "has ever sexually touched a child," i.e., not limited to children "in his charge." The lawyers continued to volley on the question(s) to be asked, but ultimately a federally-administered polygraph examination was administered in early June which Mr. Devine reportedly did not pass.

On July 8, 2011 defense counsel, by email, told the Government that the Defendant would proceed with a plea disposition and requested a written plea agreement to review. The prosecutors expressed the intent to issue superceding charges given that the original Information had contained an error in Count I. They also alluded to the addition of other charges. The defense then filed the now-pending Motion to Enforce Plea Agreement on July 15, and the Government filed the Superceding Indictment on August 4th charging Mr. Devine with distribution of child pornography on August 17, 2009, August 23, 2009 and September 18, 2009 and possession of more than 600 images of child pornography on August 4, 2010, prompting Defendant's second pending motion to strike the first three counts.

## **DISCUSSION**

A. The Motion to Enforce Plea Agreement

Counsel and the Court agree that the issue presented is resolved by invoking conventional contract law. In <u>Santobello v. New York,</u> 404 U.S. 257 (1971), the Supreme Court confirmed that guilty plea agreements essentially are contracts and courts are to consider contract principles when a defendant seeks to enforce a plea agreement. <u>Cf</u>. <u>United States v. Isaac,</u> 141 F. 3d 447 (3d Cir. 1998). The fundamental contract principles that inform this dispute then is whether there was an offer and an acceptance so that, in other words, there was a meeting of the parties' minds as to the putative plea agreement. The defense poses the proposition that

the Government made an offer to the Defendant that if he took and passed a lie detector test on the question of whether the Defendant had touched a child in a sexual way then the Government would only charge him with a crime that did not carry a mandatory minimum sentence. Having read the parties' submissions, heard all of the testimony of the key participants and observers about what transpired between and among them and re-read each of the exhibits that represent their additional communications, the Court concludes that there was never a point in time when the parties actually reached an articulable agreement. What the evidence demonstrates is perhaps best summarized by defense witness Dr. Atkins who testified as to his impression from witnessing the discussion exchange that the Government was not offering to drop charges against Mr. Devine and that the prosecutors had "tremendous concerns" about Mr. Devine's background with children and that defense counsel "was concerned" because Mr. Devine had failed a polygraph initially when arrested. Thereafter, while the <u>subjects</u> of the various charges and potential charges were discussed, while the prosecutors' concerns about Mr. Devine's prior conduct were repeatedly expressed, and while administration of a polygraph was raised as a possible tool for assuring the prosecutors' concerns (a tool that defense counsel repeatedly and unequivocally declined or otherwise eschewed), never did the lawyers actually agree. Not only did they never agree as to matters that might be considered material to the issue at hand (such as, who would administer the test, what questions would be asked during the test, what would be done with the results), but the lawyers never actually worked out what effect - - if any - - of the examination would be, the <u>quid pro quo</u> as it were. In the language of the Restatement 2d of Contracts §§ 20, 22, 33, the facts fairly established by the evidence presented show no specific

9

offer and no manifestation of a mutual knowledge and assent to essentially the same understanding of what the lawyers were discussing throughout the six months of negotiations.

What this rendition of events shows is that even well-trained, well-intentioned, dedicated, intelligent professionals who know each other and know their respective concerns can and do see and hear things differently - - not unlike laypersons on whose perceptions lawyers and courts try to resolve legal issues day in and day out.

B. Motion To Dismiss Counts I, II and II

Mr. Devine claims that the Superseding Indictment was filed more than 30 days after he was "arrested or served with a summons" in connection with his original submission to the jurisdiction of this Court. He relies principally on 18 U.S.C. §§ 3161(b) to urge that Counts I-III be dismissed.

Section 3161(b) expressly addresses the situation where a federal complaint and warrant have been filed against an individual and requires the Government to charge by way of Information or Indictment within 30 days to comply with the Speedy Trial Act provisions.[2] Here the 30-day time limitation is inapplicable because Mr. Devine was never charged by way of complaint or warrant, and the only "summons" came as a result of the Information that was filed. Thus, as the Government points out, the first charging document ever filed in this case was the Information, so that § 3161(b) is not applicable.

The purpose of the requirement that charges be filed within 30 days of an arrest is to ensure that a defendant is not held under an arrest warrant for an excessive period without

---

[2]Mr. Devine's arrest by state authorities and the filing of state charges do not trigger the time limitations established by the federal Speedy Trial Act. See, e.g., United States v. Green, 508 F.3d 195 (2007).

10

receiving formal notice of the charges again him.  Here there was no "arrest warrant" given that there was never any federal complaint filed against him.  He received notice of the formal charges against him with the filing of the Information.

The only time limitation that is applicable to Mr. Devine is the 70-day time period in which he must be brought to trial under the Speedy Trial Act.  The charges lodged in the Superseding Indictment charge three different dates that Mr. Devine allegedly distributed child pornography, but the same possession charge and date as was lodged in the original Information filed on January 3, 2011.  Thus, while the possession charge may still be subject to original 70-day Speedy Trial Act time limitations plus any excludable time, the remaining counts are subject to new time limitations for trial.  See 18 U.S.C. § 3161(d)(1).  No challenge is made on that ground.

The facts presented to the Court make it abundantly clear that Mr. Devine and his counsel were well aware of the dates that were alleged that he distributed child pornography, namely those charged in the Superseding Indictment, that the date charged in Count One of the Information was incorrect and the Government would move to supersede at least those charges.  The parties continued to engage in negotiations even before the original Information was filed, beginning in December 2010 and continuing well into the summer.  Mr. Devine has no cause to challenge the filing of the Superseding Indictment as a violation of his rights, either as expressed by statute or as intended by the purpose of that law.

**CONCLUSION**

An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge